UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No: 07-018ML |
| | ) | |
| MANUEL MENDEZ-PIMENTAL | ) | |

GOVERNMENT'S RESPONSE AND OBJECTION TO THE PRESENTENCE REPORT AND DEFENDANT'S MOTION TO DEPART

## I. INTRODUCTION

The defendant, MANUEL MENDEZ-PIMENTAL ("Pimental"), seeks a non-guideline sentence. Although styled "Motion to Depart" Pimental provides no guideline departure analysis. Rather, he cites United States v. Booker, 543 U.S. 220 (2005) and requests a reasonable sentence below the now advisory guidelines. However, the factual basis for his request seems to suggest that Pimental believes his criminal history category over represents the seriousness of his offense (Defendant's Memorandum at p.5).

The United States maintains that Pimental should be sentenced within the guideline range because the facts on which he relies do not warrant a departure under traditional guideline analysis, and because the Presentence Report ("PSR") overlooked an enhancement for obstruction of justice.

## II. ARGUMENT

The PSR places Pimental at an offense level of 17 and a criminal history category of II with a sentencing range of 33-41 months. He argues that the guideline range is clearly excessive when the Court considers that his original deportation was based on an offense for which he only received an 18 month probationary sentence. Although he later violated his probation and was ordered to serve 30 days imprisonment, Pimental asks the Court to ignore his subsequent criminal conduct and prison sentence. Simply revising history, Pimental reasons that had he not violated his probation, his criminal offense level would have been lower. Pimental then simply recalculates his offense level and criminal history category as if he had not been subject to the violation sentence imposed, arriving at an offense level of 11 category I. Without any justification, Pimental claims that his sentencing range would have been and should have been 8-14 months imprisonment.

The Court should not adopt this reasoning. First, it ignores the fact that Pimental was convicted of a drug trafficking offense and later violated the probationary period imposed. There is no accounting for why Pimental received the lenient sentence he did for a drug trafficking offense or for the violation, but the effect of the conviction and sentence is clear under the guidelines. Pimental does not even hint at why the Court should ignore the violations. The Court should not simply pretend that his sentence was something other than what it was.

The departure requested by Pimental sounds like a request made under U.S.S.G. § 4A1.3(b)(1). That guideline provides that a Court can consider a downward departure "if reliable information indicates that a defendant's criminal history category substantially over represents the seriousness of the defendant's criminal history, or the likelihood that the defendant will

commit other crimes ... ." Application Note 3 of this guideline discusses downward departures. That provision advises the Court, "a downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." That is clearly not the type of situation confronted by the Court in this case.

On March 24, 2000, at the age of 25, Pimental was convicted of a drug trafficking offense that he committed near a school or park while carrying a dangerous weapon (PSR @ ¶ 26). Nine months later, on July 27, 2001, Pimental admitted that he violated his probation and was ordered into drug treatment. Id. On September 14, 20012, Pimental admitted that he violated probation again. This time he was sentenced to 30 days imprisonment. Id. That is the sentence Pimental wants to ignore. However, that was not his last contact with law enforcement.

On May 12, 2002, Pimental was arrested for drunk driving and later paid a $200.00 fine. (PSR @ ¶ 28). Boston Police Department reports record Pimental's demeanor as "violent and uncooperative." Id. On February 21, 2003, Pimental was again found to be a violator, at which time the Court extended his probation and ordered him to attend a "batterer's program." (PSR @ ¶ 26). This violation apparently relates to an instance in which he assaulted and beat his girlfriend in a domestic violence altercation (PSR @ ¶ 31). That charge is still pending and a warrant for Pimental's arrest is still outstanding. Id.

In addition to other arrests that did not result in prosecutions, Pimental has an outstanding warrant for a charge of failure to stop for police and destruction of property. (PSR @ ¶ 31). In that incident the Court file indicates that Pimental was observed in suspected drug transaction. In

the process of fleeing from officers in an automobile, he struck a police vehicle causing damage to a headlight on the cruiser. Id. In short, not only is Pimental's criminal history not over represented, it may in fact be under represented.

Furthermore, it appears that Pimental has already received the benefit of a lenient interpretation of the sentencing guidelines. As noted in the Prosecution Version, "... [Pimental] admitted to burning his fingers for the purpose of not being able to be identified by his fingerprints." (PSR @ ¶ 8). Such conduct amounts to an obstruction of justice. See U.S.S.G. § 3C1.1.

Obstruction of the administration of justice includes attempts and can occur prior to the start of the investigation of the offense of conviction, provided that the conduct was purposefully calculated and likely to thwart the investigation or prosecution. See: U.S.S.G. § 3C1.1 and App. N. 1. In this case, the immigration offense and the investigation that the defendant attempted to impede, involves his identification as an alien illegally present in this country. He attempted to obstruct the ability of law enforcement to identify him as an individual previously deported by physically removing his fingerprints. Fingerprint identification is central to the files maintained by the immigration service. Indeed, Pimental was actually aware that his fingerprints were taken at the time of his deportation for the purpose of identification should he ever return. Intentionally and painfully removing fingerprints by burning can only be purposefully calculated and intended to thwart the investigation or prosecution of the very offense for which Pimental now stands convicted. Because obstructive conduct can occur prior to the start of the investigation, no knowledge of the pendency of the investigation is required.

The PSR overlooks the obvious application of this two level enhancement. Hence, Pimental's guideline level is already 2 levels lower than it should be.

## III. CONCLUSION

For all of these reasons, the defendant's Motion to Depart should be denied and the defendant should be sentenced accordingly within the guideline range.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Phone: (401)709-5033
Fax: (401)709-5001
Gerard.Sullivan@usdoj.gov

CERTIFICATION OF SERVICE

I hereby certify that on this 30th day of June, 2007, I caused the Government's Response and Objection to the Presentence Report and Defendant's Motion to Depart to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

John M. Cicilline, Esq.
81 Atwells Avenue
Providence, RI 20909

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Phone: (401)709-5033
Fax: (401)709-5001
Gerard.Sullivan@usdoj.gov